Mr. Ballinger, we'll hear from you. Thank you, Your Honor. May it please the court. My name is Scott Ballinger. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce Mr. Marie McKenzie and Mr. Joshua Short, who will be presenting arguments today for Mr. Wright. Mr. McKenzie is going to handle the opening argument. All right. Thank you so much. Welcome, Cavaliers. Glad to have you with us. And Ms. McKenzie, you may proceed. I'm sorry. Thank you. Thank you, Your Honor. May it please the court. I also ask, if I may, to reserve five minutes of rebuttal. Mark Wright has spent the last nine years in prison for a crime he was never to properly consider because his attorney did not bother to investigate the prosecutor's erroneous claim that grand larceny was a lesser-included offense for the charge of a crime of robbery. As the prosecutor from the South Carolina AG's office said in the second case before this panel, the first question in any Strickland analysis is whether the defense attorney conducted an appropriate investigation. The Sixth Amendment right to competent representation cannot be satisfied by an attorney who fails to do the legal research necessary to support an informed legal judgment. Mr. McKenzie, are you going to have to keep your voice elevated as much as possible because you're trailing off? Speak a little louder than you ordinarily would because you're trailing off. Yes, Your Honor, will do. There you are. I'm sorry. A defendant's Sixth Amendment right to competent representation cannot be satisfied by an attorney who fails to do the legal research necessary to support informed legal judgments, unless for some reason the circumstances make failure to do that research professionally reasonable. In Hinton v. Alabama, the United States Supreme Court held that unjustified ignorance of the And in Wiggins, the court held that standard to have been clearly applicable for ethical purposes since Strickland itself. But this is not the standard that the Virginia Supreme Court applied. The Virginia Supreme Court did not even attempt to justify counsel's failure to look into potential lesser included instructions. And that's because no justification is possible. Now, of course, if an uninformed attorney lucked in a position that could not possibly have prejudiced the client, the defendant wouldn't ultimately be entitled to relief. But that's a separate prejudice question. And it's analyzed under a much less deferential standard. The question is whether counsel's failure to look into the law could have led to a reasonable likelihood of a different result. And the Virginia Supreme Court never actually got the prejudice inquiry. Instead, the Virginia Supreme Court told Mr. Wright that unless he could show that no competent counsel could have made the same decision that his attorney made in this case, he had no claim. And that's clearly not the federal rule. The no competent counsel standard articulates the maximum deferential standard. You can't get more deferential than to ask whether any fully informed attorney might have made the same decision. And the cases that the Virginia Supreme Court cites for the no competent counsel standard clearly don't apply in this context. Those cases stand for the well-established principle that in the face of a silent record, an attorney is presumed to have engaged in informed decision making. But in a case such as this one where we have evidence, and here we have a lower court factual finding that the attorney acted in ignorance of the law, then the question becomes whether the attorney's failure to do the research was itself professionally useful. Yes, Judge? So, Mr. Ballinger, let me ask a question kind of this way. I'm pretty familiar with those cases. The issue which he clearly didn't know about came in the context of a trial, in the dynamic trial. So it feels a little bit less like a failure to investigate and just a failure to know an issue that was presented in the course of a trial where you don't always get to say, hey, let me stop our trial and go research some stuff. Maybe you should. Maybe that's the point. But does that matter at all? And does the position you're arguing mean that any time a lawyer in the middle of a trial makes a decision on a mistaken view of the law that he nevertheless feels is beneficial, that that's automatically ineffective assistance? No, Your Honor, not automatically. Under Wiggins, the question becomes whether the attorney's ignorance is itself professionally excusable. And here what Wright's trial counsel did is indefensible. He made a mistake about a fundamental point of law for his client, how much time the client could spend in prison, what crimes the jury could and could not be able to question. And so under Hinton, we have here a quintessential example of unreasonable performance. Now, the Virginia Supreme Court did not address the prejudice prong. So it's reviewed de novo by this court. And under Strickland, the prejudice inquiry, of course, is whether there is a reasonable likelihood of a different result but for counsel's failure to investigate. And as you can see, there's a lot of evidence in the Supreme Court that suggests that there is a reasonable likelihood of a different outcome. Now, if Mark Wright's attorney had had the wherewithal to object to the grand larceny instruction, his objection would have been sustained. The instruction was illegal under Virginia law. Now, there are several arguments from the Commonwealth that I'd like to take some time to address. First, the Commonwealth argues that were it not for the grand larceny instruction, the jury wanting to convict Mark Wright of something would have just convicted him of the robbery charge. We have two responses to that. First, the jury did not condition its robbery acquittal on a grand larceny conviction. The jury found that the elements of robbery had not been met. And Strickland requires us to assume that the jury did its job. And furthermore... But counsel, let me stop you there. I think that's fair. But isn't the issue not that what the jury did, but what the lawyer was thinking about and what the risks were pre-verdict? I mean, I get you now that there's an acquittal on robbery. We know that fact. It'd be one thing. But when you don't know what the jury is going to do on robbery, I know you got petty larceny. But you think, hey, they're not going to give them just a slap on the wrist with that. I'm worried about the other. That's where the lawyer was. And so is our inquiry at that point or does our inquiry have to be informed by what the jury subsequently did? Because then it's easy, right? You know for sure what you're going to do. I think it's important, Your Honor, to separate the prejudice and the deficiency inquiries. And your concern gets at the deficiency question. When analyzing whether counsel's conduct was professionally reasonable, we have to look at his conduct based on what he knew at the time. And you're right. He didn't know what the jury would do. But the deficiency here was counsel's failure to know the law, to know a fundamental point of law. And again, in Hinton, that is clearly a quintessential example of unreasonable performance. Now having established deficiency, Strickland moves on to the prejudice inquiry. We have a separate inquiry because we want to ensure that a claimant only gets relieved when they were actually prejudiced by their lawyer's incompetence. But the prejudice question is just much less differential. It's whether there's any reasonable likelihood of a different result. And the possibility that the jury might have convicted a robbery had it not had the grand larceny alternative just doesn't cut it. The prejudice question is not whether creative prosecutors can come up with a counterfactual in which Mark Wright still ends up in jail for grand larceny. The prejudice question is whether Mark Wright can show any reasonable likelihood of a different result. Now the prosecution, or sorry, the Commonwealth also claims that Mark Wright wasn't prejudiced because the prosecutor could simply have moved the agreement right there. And we also have two responses to that. First, the likelihood of the same result does not negate, or sorry, the possibility of the same result does not negate a reasonable likelihood of a different result. So here the prosecution's claim again is premised on the idea that so long as creative prosecutors can come up with a counterfactual in which Mark Wright ends up in the same place, that he can't show prejudice. But that's just not the question. And besides, the prosecutor testified in this case that such motions to amend the indictment are unusual. There's no reason to think that he would have brought such a motion and there's even less reason to think that the court would have accepted the motion. Why in the world would a busy trial judge, after the close of the evidence, allow the prosecutor to amend the indictment just to include a charge that he had already decided not to include? It is at the very least reasonably likely that the judge would have denied the motion and instructed the prosecutor to carry on with the crimes he had actually chosen to charge and any proper lesser-included offenses of those crimes. At the end of the day, the Commonwealth's argument comes down to the claim that Mark Wright has waived the mention of petite larceny. But the petite larceny instruction or the possibility of the petite larceny instruction really only comes into this case by way of response. It's not a new claim and it's not even a new argument. It's a rebuttal to Virginia's report's erroneous application of the no-competent counsel standard. Mark Wright is simply saying that even if the no-competent counsel standard was applicable to failure to investigate cases, which it's not under clearly established law, Mark Wright should still win this case because no fully informed attorney would have asked for or accepted a lesser-included instruction for grand larceny just to offer the jury a less serious alternative when he could have gotten the same thing without exposing his client to an additional 20 years in prison. And as the court said in Vinson v. Drew, even under the writ risk EDPA standard, you don't have to credit an attorney's decisions if they made no sense whatsoever. If you have any more questions, I'd be Mr. Johnson? Good morning, and may it please the court, Victoria Johnson on behalf of the director of the Virginia Department of Corrections. This court should deny Mr. Wright habeas relief in this case because he has failed to establish that the Virginia Supreme Court's denial of his ineffective assistance of counsel claim was based on an unreasonable determination of the facts or an unreasonable or contrary determination of an application of federal law. In order to meet this standard, Mr. Wright must show that despite the wide latitude the Virginia federal Strickland standard is still managed to blunder so completely that no fair-minded jurist can agree with denial of relief. Additionally, Mr. Wright has not established Strickland prejudice. Turning to the EDPA standard under 2254 D1, I think that that is where this, that's obviously the primary question before this court. Mr. Wright has argued that the Supreme Court of Virginia applied a higher standard than that allowed by Strickland for deficient performance because the Virginia Supreme Court used the phrase no competent counsel. I submit that that's an incorrect and mistaken reading of the law. The no competent counsel phrase has been used pretty consistently in both state and federal courts as a convenient short. Counsel, sure, but like the context, right, the phrase itself appears frequently. But it seems, and I, do you agree with this reading of what the Virginia Supreme Court held? It seemed to me that what they held was whether or not his performance, whether or not this lawyer was unreasonably uninformed as to the law, the question for deficiency is whether some other hypothetical informed counsel might have made the same decision not to object to instruction number 10. And because he can't show that this other hypothetical informed counsel would have been unreasonable in failing to object, then he can't prevail. I mean, that's how I read the Virginia Supreme Court decision. Do you disagree? No, I don't disagree, but that is okay. Well, how is that right? How is that right? I mean, it seems that it, I don't understand how to mesh that with the Supreme Court decisions saying that, you know, if the investigation or the, that a strategic judgment is only as reasonable as the information that goes into it. And so if a counsel is not informed, he's not in a position to make a strategic judgment. How do we mesh those two things? I think I have two answers to your question, and I'll start this way. The Strickland standard, or pardon me, the Strickland standard for deficient performance is whether an attorney's conduct fell below a wide range of acceptable competent performance. And I think that the hypothetical no kind of views throughout various cases is a shorthand for that. It's whether an attorney's performance is objectively reasonable. Let me make, I need to, there are two different ways you could think about this case or argue this case. You could say it was reasonable, and this is sort of picking up on my colleague Judge Qualibon's question, it was reasonable for this lawyer not to know that grand larceny was not a lesser included offense. Some other competent counsel might not have known that too. I didn't understand the Virginia Supreme Court to be saying that. I thought they were saying, or that the Virginia Supreme Court was saying whether or not it was reasonable for him not to know it doesn't matter. Because even if he had known it, he still might not have objected. It is possible to imagine a competent counsel who knew full well that instruction 10 was wrong and still didn't object, because that's what the Virginia Supreme Court said, because he wanted the jury to have the alternative of a lesser included offense. And so some other fully informed counsel might have made the same decision and therefore he doesn't prevail under Strickland. So those are two different things, right? I think I see them as two sides of the same coin, Your Honor, and maybe I'm just not picking up on the court's distinction here. I think that they're, like the court said, I think that there's a couple of different ways to look at the case. I think that you can look at it as, and I think that this is probably how the Supreme Court of Virginia applied the general rule in Strickland, and I submit that it was not unreasonable within the meaning of 2254D, that here, even if a fully informed attorney knew that grand larceny from the person was not a lesser included offense, there are good strategic reasons for that fully informed attorney to not object to the jury instruction. Counsel, let me stop you on there. I think which of these two options to me is pretty important, because in that second scenario, you're suggesting that a lawyer, the court is about to make a charge that the lawyer knows is contrary to the law, right? I mean, under that hypothetical, the lawyer knows that grand jury is not a lesser known offense and knows that the judge is about to do something that's legal error. And are you saying it's reasonable? A, does he have an obligation under the rules of professional responsibility to point that out? And is it unreasonable to kind of ignore that and go forward? That to me seems like a pretty big problem with the second issue. Sure, it's better for his client, maybe, or arguably, but it's contrary to his ethical responsibilities. The first one, Judge Harris makes a good point, it may or may not be the court's reading. I think you might look at that and that's an issue, but it seems to me the first one may not be, may have some stuff you don't like in it, but may be the way you have to go. Well, Your Honor, I think that actually highlights a real big picture concern in this case, and that is whether an attorney, a defense attorney, has an obligation, a constitutional obligation to object when the Commonwealth, when the government makes a mistake that can in order to his client's benefit. And I think that the ethical obligation may actually cut the different way for a defense attorney. So you want to stick, and I don't blame you because I think this is what the Virginia Supreme Court held too, you just want to stick with the theory is that because even if he even if his failure to object was a legal error, it's still not deficient because he can't show that a competent and informed counsel would not have taken the same action that his counsel did take, right? I mean, this seems clearly what the Virginia Supreme Court is saying. Whether or not he had any idea what he was doing doesn't matter, because as you say, a fully informed counsel might well have chosen to let this charge go to the jury. And I guess I just don't I'm having trouble meshing that with other cases on this. Let me ask you this hypothetical. What if counsel, instead of being sort of metaphorically asleep at the wheel, had been literally asleep during the colloquy over Instruction 10, and so he didn't object? It seems to me the Virginia Supreme Court would then ask, okay, that was bad, but could some other alternative hypothetical awake lawyer have made the same decision? And because that awake lawyer might have made the same decision, there's no deficient performance. I think there's case law that is directly on point. I don't have it at my fingertips at the moment. Yes, and it goes the other way, which is why I'm raising it. And I think that the case law goes the way your colleague was talking about it. That's a prejudice question. We absolutely ask that question for prejudice. But nobody says just because a hypothetical awake lawyer might have decided not to object, that's not deficient performance. And so I don't see how you whereas the Virginia Supreme Court clearly seems to be asking that question. Even if this lawyer didn't object because he was ignorant of the law, it doesn't matter because even if he had known the law, he would have made the same decision. And that's exactly what counsel testified to at the evidentiary hearing. I know, but if he had been asleep and had come to an evidentiary hearing and said, look, it doesn't matter, even if I'd been awake, I wouldn't have objected. I really wanted the jury to have a drop down option. You know, that's not the way the case is analyzed, this question. If you're not in a position to know that you are being called on to make a strategic judgment, it doesn't count as a strategic judgment. This lawyer, he had no idea that he faced a strategic choice because he didn't know he had any grounds to object to this instruction. I think that he didn't know that he had grounds to legally object to the instruction. But I don't think that that means that he was in full not making a strategic decision. Because he was making a strategic decision based on what defense he wanted to forward at that moment. And that was, do I want to do an all or nothing on robbery or do I want to have the option of a drop down? And my colleagues on the other side have argued that, well, he could have gotten petit larceny instead. But even before you get to petit larceny, he didn't think he had a choice as to whether he wanted to go all or nothing or take the drop down. Because as I understand it, under Virginia law, if grand larceny of the person is a lesser included offense, the state gets that instruction. He has no grounds to object. So he didn't have a choice. The state has made the choice for him. There's going to be a drop down. And what he testified to was that he wanted that drop down because at that point the Commonwealth had shown a pretty compelling narrative of the events of the day that had gone from a shoplifting event to a confrontation, a daytime confrontation in a parking lot to a standoff that lasted for a couple of hours. Eventually, some of the more serious charges, the assault on the police officer, well, the obstruction wasn't that serious, but the obstruction, the malicious wounding by means of chemical, all of that dropped out on appeal based on arguments that this attorney made. But the attorney didn't know that that was going to happen. The attorney didn't know how the jury was going to go on the robbery charge. Two motions to strike, or I think in federal parlance, this motion for judgment of acquittal, had been denied. So the evidence had been determined to be legally sufficient to go forward on robbery. At that point, he needed to know whether he was going to go all or nothing on robbery or whether he'd get a drop down. Now, I've argued that the pennant larceny option was something that wasn't pled in state court and is defaulted. But I submit that the pennant larceny option wouldn't have worked for him anyway, because under Virginia law, the lesser included has to be supported by more than a scintilla of evidence. And here, there wasn't more than a scintilla of evidence. If there was a second taking, it was from the person for an item that was valued for more than $5. And so that pennant larceny instruction wouldn't have gotten him very far. And I think to kind of revisit where the court's questioning was earlier, I think that the Virginia Supreme Court's application of Strickland in this case was within the range because the Supreme Court of the United States has never held that an attorney's ignorance in this context deprives him of any deference. In other words, even in Kimmelman, where the Supreme Court of the United States said there is no way that this decision to not take a motion to suppress was a strategic decision. The poor attorney just thought that the government turned over all of the inculpatory evidence. The court still said, we're going to look at that with a fair measure of deference, a heavy measure of deference, and decide this for objective reasonableness. And that's exactly what the Supreme Court of Virginia did here. The Supreme Court of Virginia looked at the facts that the defense attorney faced at the time, and he made an eminently reasonable decision to avoid an all or nothing gamble. Going back a little bit and kind of addressing this from a reasonable investigation standpoint, which is how it was going into trial, the defense attorney testified that he did not think that the robbery charge had a leg to stand on. Because the evidence at the time was that Mr. Wright had not participated in any physical taking. His brother, Mr. Robert Wright, and this was always the defense theory, his brother, Mr. Robert Wright, our petitioner here, was on the other side of the car that had nothing to do with him. In that context, there was no reason for Mr. Mark Wright's defense attorney to seek a lesser included. Instead, his strategy was to test the Commonwealth, put that to the test, and expect it to fail on the merits. When the Commonwealth amended the indictment at the beginning of trial, the Commonwealth broadened that, and of course the strategy had to change at that point. And I think that that's a very important factor in this case. And I want to just briefly touch on prejudice. Before you go to ineffectiveness, a little bit of a Des Harris question. Is your view on the deficient performance, no harm, no foul play? No, your honor, I don't think it is. I think that my... It can't be strategic because he didn't know he had an option. Aren't you really arguing that, well, he didn't know he had an option, but it didn't make any difference because keeping it in there helped his client? I think that my position is a little more I think that my position is that the interest in this case, and this case may be kind of an outlier, but the interest in this case of having that drop down on these facts and with this jury and how the trial was going, outweighed whether he knew that he could object to that instruction. He wanted the instruction any day of the week. He was in trouble. His case was going down. He was worried about his client going to jail for a long time. And I think that that kind of, and I know that it may not get the imprimatur of strategic decision that we have in the case law, but I think that kind of strategy can be illustrated by a hypothetical where he didn't object to this gift from the Commonwealth of a lesser offense, got convicted of robbery, and got sentenced to 20, 30 years for robbery. And then the habeas claim would be, why did you object to that when I had a drop down option that I could have had? And I think that this is the kind of double edged, condemned if you do, condemned if you don't situation that defense attorneys face every day. I don't think the counsel, I may be wrong, but I don't think counsel has an obligation at all to object to something. No, your honor. He had known it was wrong. It's not his job. No, it absolutely is not. And I think that putting a constitutional duty on a defense attorney to bring the Commonwealth's errors to the court's attention so they can get fixed. That's contrary to the ethical obligation of a defense attorney. And I actually did check that before I made this argument. I can provide some legal ethics opinions to the court if the court would like me to do that by 28 J letter. They're a little bit older, but they're Virginia ethics opinions. I'm old, so it's like a dinosaur, but it used to be a long time ago. People charged with drunk driving, driving under the influence. You know, the judge want to give him a break in the district courts. It's okay. I'll find you guilty of reckless driving. Yes. Thank you so much. Reckless driving was not a lesser included offense of driving under the influence, but it was happening defense counts because a lot of implications were driving SR 22 and all those things like that. So that was a long time ago. But I guess the question is, it does get to as Judge Harris say, if you're asleep, it doesn't matter that it turned out that it's a good thing you didn't cross examine that witness because that helped you. But you said you can't take advantage of it when you're charged with deficiency because you didn't know you were doing that. I guess so. It's like if a tree falls in the woods, it doesn't make a sound. Almost that kind of it's kind of interesting because counsel could do that strategically. A competent lawyer could have done that strategically. But here he says he didn't know. So the question is, is he barred from that because he didn't know. But a competent lawyer may have done the same thing with the same effect. But because she knew that that's what the strategy was, that's okay. But because he didn't know, same result. But then he may be deficient. Isn't that kind of like what you're talking about? It is, Your Honor. And I'd really like to speak to that. But I know I'm out of time. Can I briefly? Fortunately for you, you're talking to the Chief. Well, I can give you time. Go ahead. Well, I really appreciate that. I think that that's a key issue in this case because the Supreme Court of the United States has told us over and over again that Strickland deficient performance is a matter of objective reasonableness. In Richter, the court said directly, Strickland is not concerned with subjective intent of counsel, but with counsel's performance. And I submit in this case saying that just because, you know, if counsel had been asleep, then he, you know, he doesn't get the benefit of this. I think that that means that a defendant whose attorney was perhaps ignorant on a point of law or was, you know, a petitioner or defendant who says, my attorney did this on purpose. So I think that that's an incorrect application of Strickland. I think that the Supreme Court of Virginia was very careful in how it applied Strickland in this case and really threaded the needle. And I think under 2254 D1, this is a very high bar for the petitioner to overcome. The Supreme Court of Virginia has a real wide latitude in how it applies that general rule. And I submit that the defendant can't pierce through AEDPA. And even if they could, it's still reasonable under Strickland. And I'd ask the court to affirm. Thank you, Ms. Johnson. Mr. Short. Your Honor, may it please the court. My name is Josh Short on behalf of Mark Wright. I just want to make a few points clear. First, the Supreme Court of Virginia applied the wrong standard that applied the maximum deferential no competent counsel standard. Again, Mr. Short, speak up because you're trailing off. Yes, Your Honor. The maximally deferential no competent counsel standard was the wrong standard in this case. And to respond directly to the state's point, Supreme Courts are not infallible. They get the law wrong all the time. AEDPA is not a high bar when the Supreme Court applies just blatantly the wrong standard. The Supreme Court of the United States has been clear that informed strategic decisions are virtually unchallengeable. But that's not what we had here. Mark Wright's attorney had no idea that grand larceny was not the lesser included offense. Now, Mr. Wright was obviously prejudiced by this oversight because, you know, he has a duty to know the law. And that's clear from the Supreme Court's precedent. And our point... No, no, no, no, no. Stick with what you just said. You said that he was clearly prejudiced. Now I want you to put some meat on that. Yes, Your Honor. He was clearly prejudiced because he was convicted of a crime not charged and not submitted to the jury without an indictment. Okay, full stop. Full stop right there. You're right. That's what happened. He was convicted of a crime that was not properly charged. I think we all agree. Not a lesser included offense. But prejudice, now you said prejudice would be an outcome because of that hurt him. How do we know that? Are you saying that you could have made a successful or likely made a successful argument of a motion for insufficient evidence on robbery if he had been convicted of it? Your Honor, well, I think the trial court dealt with that issue. And we're talking about whether grand larceny is an appropriate lesser included offense here. And trial counsel had not done the research necessary... No, no, no. But you say it was a prejudice. But wouldn't that be the alternative in terms of... If you're going to talk about prejudice, you've got to play it out a little bit. Because you take out the offending thing to see what would have happened. So the offending thing was, he should have said, Your Honor, excuse me, you shouldn't have that instruction in here because that's not a lesser included offense. Thank you, counsel. I appreciate you letting me know. Take it out. Same evidence goes before the jury. I'm asking you to have some prejudice now because now we've taken the wrongful deficiency out. Would there be enough evidence to find him guilty of robbery in this case? Your Honor, the jury acquitted him of robbery. And as a factual matter, Mark Wright was on the other side of the card during this situation. And I think the existence that the state wanted to include a lesser offense made it seem like they were uncomfortable with going all or nothing on the robbery charge. And if Mr. Wright's attorney had done his constitutional duty and suggested the petite larceny instruction, I mean, that is what the Constitution requires is for him to know the law. And he failed to know the law in this situation. And that prejudice Mr. Wright. He spent 10 years in prison for stealing a case of beer and a couple of sandwiches. And that's what this case comes down to. Is the fact that the state had the prosecutor in this case... Sorry, Your Honor. I guess that's the question. And I don't know the answer necessarily. I'm intrigued by this. I really want to be informed because I see what you're saying. He does 10 years in prison. And it turns out that it wasn't grand larceny. But the thing is that you're assuming that without the grand larceny, they would have said, oh, no robbery, petty or petite larceny. Your Honor, Strickland requires us to assume that the jury did its job. And here the jury acquitted Mr. Wright of robbery. And, you know, without this error from counsel from failing to do the necessary legal research, he would have never spent the last 10 years in prison. It's more than likely that he would have been out in 12 months. That was the maximum amount of debt or the maximum amount of jail time. And I think prejudice... Can I ask you one last question? Yes, Your Honor. If, in fact, this is hypothetical, it's a counterfactual, not this case, but very close, but not this case. If he knew that that was a erroneous instruction and said, hmm, I know this is not right, but I think it's a chance that they may give him robbery. So I'm going to let it stay there. If he did that and they found him guilty of grand larceny, would that be deficient? Yes, Your Honor, because the grand larceny required the trial counsel to acquiesce in a legal instruction. And it also was not the actual lesser included offense of robbery. And so it would have been deficient for the fact that it was both illegal. It was unreasonable. And, you know, Mr. Wright has suffered prejudice from that. He spent the last 10 years in prison because of this decision. So your position is whether it would have been helpful or not. The fact that he didn't move to strike it was deficient, whether it helped or not. Your Honor, I think Judge Harris had it exactly right, that the deficiency was the failure to know the law. And that decision influenced his ultimate omission to not object to this situation. And, Your Honor, I see my time has expired. I'm happy to answer more questions. I just have one more question. So I think you're right. His ignorance of the law influenced his decision not to object. And I think his desire for an alternative to robbery, you know, there's testimony that influenced his decision not to object. You know, which makes this, I guess, kind of hard because we got two things. And I guess and your point seems to be that the first part of his decision making, you know, wipes out the second part. And I guess I understand that. Is there, you know, given the standard that we look at, is there a case like this, you know, where there were dual reasons, dual justifications, one of which was erroneous and may have been deficient, but the other is strategic? And the reason I ask that is, you know, we're looking at least in part as to whether this is an unreasonable application. And so is it, what's the closest case in that situation, you know, so we can apply that part of the test? Your Honor, I think this is a pretty bizarre situation. And I think, just being honest, and I think I would refute that there were two possible outcomes here because Mr. Wright's attorney failed to do the necessary research. He could not have formed a strategy. He didn't understand the relevant considerations on both sides. You can say that he wanted to limit his sentence for Mr. Wright's sexist exposure, but good intentions are not good enough for the Sixth Amendment. And it required Mr. Wright's trial counsel to look into the relevant law and once he understood those considerations, then to either, I mean, he had to object in that situation because that was an illegal instruction and it would have been totally reasonable for him to go all or nothing on the robbery charge because the evidence was weak in that situation. But he was also responsible for the cheap larceny instruction. I think both of those outcomes are totally reasonable. But the error was the failure to do legal research back. I mean, this is a crucial part of the case. This is when the rubber hits the road. This is how long is my client going to be in jail time? And counsel came unprepared to answer that situation. Well, well, the jury, as you know, Virginia, the jury recommended the sentence, right? Yes, your honor. And what, what, what, what, what's the low range of grand larceny? The low range is zero, but that low range is zero. No, no, I don't. I'm talking about the sentence range found not guilty. I'm talking about sentencing range. Yes, your honor. I think, I think that the sentencing range for grand larceny is zero to 20 years, which is right. What did they recommend for him? Ten years, your honor. You think it's likely that they would have found him guilty of petty jury if they felt 10 years was sufficient? Well, your honor, grand larceny should have never been submitted to the jury in the first place. No, you're missing my point. Never mind. I see. All right. Thank you, your honor. I'm happy to answer more questions. Thank you. All right. Mr. Ballinger, first of all, I note that you're court appointed. Please come up. Yeah. I'd like to see our students here. Make sure you keep your social distance. But no, I just want to say thank you so much. You're court appointed on behalf of the court. We really appreciate that because it helps us so much. In cases like this, a very thorny and tough issue. It's a novel in a sense. I just want to thank you so much. And students, you certainly acquitted Mr. Jefferson's school very well today. And we thank you so much for being here. Ms. Johnson, thank you so much for your able representation of the Commonwealth as well. And with that, we can't come down and greet you. I hope you all be safe and well. Thank you so much. Thank you, your honor. All right. Adjourn the court. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, Pamela A. Harris, A. Marvin Quattlebaum Jr.